IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF

UTAH

NORTHERN DIVISION

| | |
|---|---|
| KOREY WHITAKER,<br><br>    Plaintiff,<br><br>vs.<br><br>WESTERN ESSENTIALS, LLC, and MATT PERKINS,<br><br>    Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Case No. 1:15-cv-00048-TC |

Plaintiff Korey Whitaker filed this action claiming that Defendants Western Essentials, LLC, and Matt Perkins (collectively, Mr. Perkins) infringed Mr. Whitaker's patent and in the process unfairly competed with Mr. Whitaker and tortiuously interfered with Mr. Whitaker's business relations. Mr. Perkins has filed a motion to dismiss the claims that do not involve infringement (ECF No. 38). In response, Mr. Whitaker moves for leave to amend the complaint (ECF No. 41). For the reasons discussed below, the court denies the motion to dismiss and grants Mr. Whitaker leave to file his proposed amended complaint.

(Mot. Leave Am. Compl. Ex. A, ECF No. 41-1 [hereinafter Proposed 1st Am. Compl.].)

## **BACKGROUND**

The following facts are derived from Mr. Whitaker's Proposed First Amended Complaint.[1]

Mr. Whitaker has invented a roping dummy that grooms the ground as it is pulled around a rodeo arena. This device allows users to practice roping a fake calf as the mechanism is pulled behind an ATV or tractor.

Mr. Whitaker received a patent for his invention. Sometime later, Mr. Perkins received a patent for a device that does some of the same things as Mr. Whitaker's invention and falls "within the scope of one or more claims of" Mr. Whitaker's patent. (Proposed 1st Am. Compl., para. 14)

---

[1] Along with the Proposed First Amended Complaint, Mr. Whitaker submits the declaration of Chip Bruegman as factual support for his motion for leave, (Mot. Leave Am. Compl. Ex. B, ECF No. 41-2 (Bruegman Decl.)), but the court does not consider, at this time, any statements that are outside of the allegations of the complaint when considering the sufficiency of the pleading.

Mr. Whitaker alleges that Mr. Perkins infringed his patent (claims 1 and 2).[2] He also alleges that Mr. Perkins unfairly competed against him (claims 3 and 4) and interfered with his business relations (claim 5) by making false and misleading statements about who invented Mr. Whitaker's device.

According to the allegations of the Proposed First Amended Complaint, Mr. Whitaker met a man named Chip Bruegman, who was the general manager of Heel-O-Matic, Inc., a company that produces and sells training products for roping athletes. Mr. Whitaker and Mr. Bruegman "tentatively reached an agreement to purchase or license" Mr. Whitaker's patent rights. (Id. para. 20.) As part of the agreement, Heel-O-Matic requested that Mr. Whitaker delay the public release of his product until they could launch it together at the National Finals Rodeo in Las Vegas, Nevada, in December 2013.

In early May 2013, Mr. Perkins met with Kyle Stricklin, a member of Heel-O-Matic's sales team, at the Northern States Team Roping Championship in Billings, Montana. Later that May, Mr. Perkins "spoke by telephone with

---

[2] At the June 7, 2016 hearing, Mr. Perkins's counsel told the court that Mr. Perkins admitted infringement "for purposes of this case."

Mr. Bruegman" (id. para. 21) about the sale of a roping ground-grooming device. Mr. Perkins "falsely stated to Mr. Bruegman, by telephone in May of 2013, that . . . [Mr.] Perkins, not Plaintiff Whitaker[,] had the rights to patent a ground grooming device . . . ." (Id. para. 22.) Mr. Perkins made this statement despite knowing that Mr. Whitaker invented his device before Mr. Perkins had designed and produced his own device. Mr. Perkins had even "witnessed a demonstration of" Mr. Whitaker's invention before designing his own. (Id.)

In the Proposed First Amended Complaint, Mr. Whitaker concludes, "[o]n information and belief" and "based on the statements of the parties involved" that Mr. Perkins falsely told Mr. Stricklin—during the Billings, Montana, meeting—that the roping and ground-grooming device was Mr. Perkins's idea, that he retained a patent on it, and Mr. Whitaker did not have a patent for the device. (Id. para. 23.)

After Mr. Bruegman spoke with Mr. Perkins, Mr. Bruegman told Mr. Whitaker that Heel-O-Matic would not move forward with their "tentative agreement to purchase or license" Mr. Whitaker's patented invention and future intellectual-property rights "because of" Mr. Perkins's statements. (Id. para. 24.) Mr. Perkins then called Mr. Whitaker to ask if he would join with Mr. Perkins

and together sell their products to Heel-O-Matic because "Heel-O-Matic would not work with either of them individually." (Id. para. 25.)

At the December 2013 National Finals Rodeo, Mr. Whitaker alleges that Mr. Perkins told "potential customers and licensees, who were awaiting the launch of" Mr. Whitaker's device that Mr. Perkins "was the inventor" of the ground-grooming devices. (Id. para. 26.) Mr. Whitaker alleges this based "[o]n information and belief." (Id.; see also id. para. 19 ("On information and belief, [Mr.] Perkins has made statements to potential customers and licensees interested in [Mr. Whitaker's invention] that [Mr.] Perkins was the inventor . . . .").)

## DISCUSSION

Mr. Perkins asks for dismissal of the third, fourth, and fifth claims, while Mr. Whitaker asks for leave to amend his complaint. Normally, the court would grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). But Mr. Perkins objects arguing that the amendment would be futile because the Proposed First Amended Complaint still fails to satisfy the pleading standards. The court may properly "deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason." Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 562 (10th Cir. 1997).

Accordingly, the court will base its decision on whether the factual allegations within the Proposed First Amended Complaint meet the pleading standards.  When doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable" to the claimant.  Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014).  But the court is not required to accept legal conclusions as true; a pleading "must offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  For a claim to survive dismissal, the pleading "must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

Mr. Perkins argues that the claims for unfair competition and tortious interference must meet the standards imposed by Federal Rules of Civil Procedure 8 and 9.  Hoverman v. Citimortgage, Inc., No. 2:11-cv-118-DAK, 20122 WL 3421406, at *5 (D. Utah Aug. 4, 2011) (unpublished) (recognizing intentional misrepresentation as a fraud claim requires particularized pleading).  At the June 7, 2016 hearing, Mr. Whitaker conceded that Rule 9(b) applied to the

claims, so the court will apply that standard.³  To comply with Rule 9(b), the claimant must state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the misconduct charged.

---

³ It is unclear if a claim under the Lanham Act, 15 U.S.C. § 1125(a) (2012)—which is the basis for one of Mr. Whitaker's two unfair competition claims—must meet the Rule 9(b) heightened pleading standard.  Compare Greenway Nutrients, Inc. v. Blackburn, 33 F. Supp. 3d 1224, 1239 (D. Colo. 2014) ("[T]he Court finds that the claims for trademark infringement and false designation of origin are sufficient to satisfy the pleading requirements set forth in Rules 8 and 10."), and Tempur-Pedic Int'l Inc. v. Angel Beds, LLC, 902 F. Supp. 2d 958, 966 (S.D. Tex. 2012) ("Given that section [1125(a)] does not contain a scienter element, the Court finds that section [1125(a)] is not concerned with fraud and therefore claims brought pursuant to this provision do not fall within the ambit of Rule 9 . . . . The lower district courts in this circuit . . . have also concluded that the sufficiency of these claims should be determined under Rule 8 rather than Rule 9.") (citing Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)), with Conditioned Ocular Enhancement, Inc. v. Bonaventura, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b).") (citing MPC Containment Sys., Ltd. v. Moreland, No. 05–C–6973, 2006 WL 2331148, at *2 (N.D.Ill. Aug. 10, 2006) (unpublished); Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., No. 05–C–1403, 2006 WL 1843370, at *2 (N.D.Ill. June 28, 2006) (unpublished)).

U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield, 472 F.3d 702, 726–27 (10th Cir. 2006).  The court will address the allegations of each claim in order.

## I.    Unfair competition in violation of the Lanham Act (Claim 3)

The third claim for relief alleges unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).  Subsection 1125(a) of Title 15 reads:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action . . . .

Mr. Whitaker's allegations in the Proposed First Amended Complaint furnish sufficient information to satisfy the heightened Rule 9(b) pleading

8

standard for this claim based on the statements Mr. Perkins made to Heel-O-Matic's general manager and sales person. Mr. Perkins spoke with Mr. Strickland in May 2013 at the Northern States Team Roping Championship in Billings Montana. Later that month, he spoke to Mr. Bruegman by telephone. In those conversations, Mr. Perkins told them that the ground-grooming roping device was his idea, he had a patent to it, and Mr. Whitaker did not. These allegations satisfy the "who, what, when, where, and how" requirements of Rule 9(b).

Paragraphs 19 and 26 of the Proposed First Amended Complaint give only general allegations about Mr. Perkins making statements to "potential customers and licensees." These allegations fail to give the information about who, what, where, and how the statements were made. That is what Rule 9(b) requires. Sikkenga, 472 F.3d at 726–27.

The Tenth Circuit has made it clear that Rule 9 cannot be circumvented with the "on information and belief" phrase without giving at least the factual basis for the belief. "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." Scheidt v.

9

Klein, 956 F.2d 963, 967 (10th Cir. 1992); see also Sikkenga, 472 F.3d at 728; Koch v. Koch Indus., Inc., 203 F.3d 1202, 1237 (10th Cir.2000); U.S. v. Stevens-Henager Coll., ___ F. Supp. 3d. ___, No. 2:15-cv-119-JNP-EJF, 2016 WL 1261063, at *19 (D. Utah Mar. 30, 2016).  Basing allegations on information and belief does not give a plaintiff "license to base claims of fraud on speculation and conclusory allegations."  Sikkenga, 472 F.3d at 728 (quoting U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir.1997)).  Plaintiffs still need to give a sufficient "factual basis" for their allegations.  Id. (quoting Koch, 203 F.3d at 1237).

    Mr. Whitaker cannot rely on the phrase "on information and belief" to exempt himself from the particularity requirement.  He has failed to allege the information showing the *who, what, where, and how* of the statements made to "potential customers and licensees." (Proposed 1st Am. Compl., paras. 19, 26.)  His allegations do not lay any factual foundation for a conclusion that Mr. Perkins told anything to potential customers other than Heel-O-Matic.  So, while Mr. Whitaker pleads enough about the statements made to Heel-O-Matic, he fails to do the same statements made to other potential customers and licensees.

## II.  Violation of Utah's Unfair Competition Act (Claim 4)

The fourth claim alleges that Mr. Perkins violated Utah's Unfair Competition Act, Utah Code Ann. §§ 13-5a-102 to -103 (LexisNexis 2013). Under the Act, "a person injured by unfair competition may bring a private cause of action against a person who engages in unfair competition." Id. § 13-5a-103. The statute further reads,

> "unfair competition" means an intentional business act or practice that:
> (i)  (A) is unlawful, unfair, or fraudulent; and
>       (B) leads to a material diminution in value of intellectual property; and
> (ii) is . . . infringement of a patent . . . .

Id. § 13-5a-102.

Again, Mr. Whitaker pleads enough to establish this claim in the First Amended Complaint.  Mr. Perkins allegedly made false and unfair statements that convinced Heel-O-Matic to reverse its decision and to stop moving forward on their tentative agreement, which so firm that Heel-O-Matic asked Mr. Whitaker to delay his public release until the December rodeo.  And whatever happened with Heel-O-Matic, Mr. Whitaker lost the opportunity to launch his product at the

11

rodeo in December, which likely reduced the worth of his patent. Moreover, Mr. Perkins admits to having infringed Mr. Whitaker's patent.

### III. Tortious interference with business relations (Claim 5)

To plead a tortious-interference claim, a plaintiff must allege: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." Eldridge v. Johndrow, 345 P.3d 553, 565 (Utah 2015). The economic relationship must

> be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. It is true that where a prospective advantage is alleged, the plaintiff need not demonstrate a guaranteed relationship because "anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman."

Behrend v. Bell Tel. Co., 363 A.2d 1152, 1160 (Pa. Super. Ct. 1976) (quoting Glenn v. Point Park College, 272 A.2d 895, 898–99 (Pa. 1971)), vacated on other grounds, 374 A.2d 536 (Pa. 1977). To "establish . . . improper means, a plaintiff must show 'that the defendant's means of interference were contrary to statutory,

12

regulatory, or common law or violated an established standard of a trade or profession.'" Anderson Dev. Co. v. Tobias, 116 P.3d 323, 331 (Utah 2005) (quoting Pratt v. Prodata, Inc., 885 P.2d 786, 787 (Utah 1994)).

Mr. Perkins argues that the allegation about Mr. Bruegman's notification that Heel-O-Matic would no longer purchase or license Mr. Whitaker's invention shows that their relationship was too tenuous to qualify as an economic relationship. The fact that Heel-O-Matic had not yet determined whether to purchase the patent outright or whether to lease Mr. Whitaker's rights does not, by itself, expose a weak business relationship. Indeed, either a purchase or a license would result in Heel-O-Matic paying Mr. Whitaker. Moreover, additional allegations present a fairly matured business relationship: Mr. Bruegman was contemplating a marketing plan and asked that Mr. Whitaker delay his public release for over half a year until the December rodeo; Heel-O-Matic considered purchasing or licensing Mr. Whitman's future intellectual-property rights; and when Heel-O-Matic's commitment slackened, Mr. Bruegman contacted Mr. Whitaker to inform him that it "would not be moving forward with its tentative agreement." (Proposed 1st Am. Compl., para. 24.) Informing someone that their relationship has ended demonstrates its prior existence and its seriousness.

The Proposed First Amended Complaint also establishes the improper-means element by alleging the acts of either unfair competition or infringement. Once again, Mr. Whitaker pleads enough facts to support a claim for tortious interference with his relationship with Heel-O-Matic, but not with any other potential customers and licensees. Paragraphs 19 and 26 do not sufficiently provide a factual foundation to satisfy the particularized pleading standard.

## **ORDER**

For these reasons, the court GRANTS the motion for leave to amend (ECF No. 41) except it strikes paragraphs 19 and 26 for failing to allege with particularity. The court also DENIES the motion to dismiss (ECF No. 38).

Dated this 17th day of June, 2016.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge